**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **PROTECTIVE INSURANCE COMPANY,** § § § | |
| Plaintiff, § § | |
| v. § § | CIVIL ACTION NO. _____ |
| **SPOTTED LAKES, LLC d/b/a 1845 OIL FIELD SERVICES; RICARDO RANGEL, SR.; and ROBERTO PEREZ,** § § § § § | |
| Defendants. § | |

**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

Protective Insurance Company ("Protective") files its Original Complaint for Declaratory Judgment against Defendants Spotted Lakes, LLC d/b/a 1845 Oil Field Services ("Spotted Lakes"), Ricardo Rangel, Sr. ("Rangel"), and Roberto Perez ("Perez"), respectfully as follows:

**I.
NATURE OF THE ACTION**

This is a straightforward coverage case whereby Protective seeks a declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.* declaring that the excess indemnity contract Protective issued does not give rise to a duty to defend Spotted Lakes and provides no coverage for the claims and damages sought in the following action: *Ricardo Rangel, Sr. v. Royal Express, Inc., et al.*, Cause No. 2017CVA001620D1, pending in the District Court for the 49th Judicial District in Webb County, Texas (the "Underlying Action").

Defendants Rangel and Perez are the plaintiffs in the Underlying Action, in which they seek damages for personal injuries allegedly sustained during a multi-vehicle accident with a

Spotted Lakes employee, Noe Moreno Jr. ("Moreno").

Undisputed facts establish that at the time of the accident, Moreno was off-the-clock and was driving his personal vehicle for personal purposes unrelated and unnecessary to his employment.

The excess indemnity contract at issue requires Protective to indemnify Spotted Lakes only for losses arising from "trucking operations." At the time of the collision, Moreno was not acting in the course and scope of his employment, and even if he had been, he was not engaged in "trucking operations" as that term is defined in the contract. Thus, the alleged losses in the Underlying Action are not covered. Nevertheless, the Defendants' conduct in Underlying Action reveals their intent to bootstrap their way into coverage in order to take advantage of the $5,000,000 indemnity limit.

Thus, Protective respectfully requests that this Court declare the rights and legal relations of the parties to this case.

## II.
## PARTIES

1. Protective Insurance Company is an Indiana company with its principal place of business located at 111 Congressional Blvd., Suite 500, Carmel, Indiana 46032.

2. Spotted Lakes, LLC is a Texas limited liability company with its principal place of business at 1995 Ranger Highway, Weatherford, Texas 76088.

3. Ricardo Rangel Sr. is a natural personal and resident of Webb County, Texas.

4. Roberto Perez is a natural person who is a Texas citizen.

## III.
## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court also has subject matter jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because every Defendant is a resident of Texas and Spotted Lakes is a resident of the Northern District of Texas. 28 U.S.C. 1391(c)(2).

8. An actual case or controversy has arisen between the parties because Spotted Lakes has made a claim and seeks benefits under the excess indemnity contract in connection with the Underlying Action.

## IV.
## FACTUAL ALLEGATIONS

**A.   The Excess Indemnity Contract**

9. Protective issued an excess indemnity contract to D & T Holdings, LLC ("D & T"), no. XA-1035-17, for the contract period of May 1, 2017 to May 1, 2018 (the "Excess Indemnity Contract" or "Contract"). A true and correct copy of the Excess Indemnity Contract is attached hereto as Exhibit 1. The Excess Indemnity Contract uses **bold font** to denote defined terms, so Protective does the same herein for ease of reference.

10. D & T is the **named insured** on the Excess Indemnity Contract, and Spotted Lakes is a **related insured**. Contract at 1, 17. None of the other Defendants' names appears as a **named insured**, **additional insured**, or **related insured** under the Excess Indemnity Contract.

11. Protective's limit of indemnity under the Excess Indemnity Contract is $5,000,000 per **occurrence** less the insured's $50,000 **self retention**.

12. Subject to other terms, exclusions, limitations and conditions, the Excess Indemnity Contract provides in pertinent part:[1]

### EXCESS CONTRACT

This is an excess contract, and it is in excess of the **self retention**, as set forth in the Declarations. The Protective Insurance Company (hereinafter called "the Company") is the indemnitor and agrees with the insured named in the Declarations and made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the Limits of Indemnity, Exclusions, Conditions and other terms of this contract, as follows:

### INDEMNITY AGREEMENTS

The Company hereby agrees to indemnify the **named or related insured** for **ultimate net loss**, less the **self retention**, and subject to the limit of indemnity, which the **named or related insured** has or may by law become liable to pay and has paid to any person or persons as **damages** . . . as the result of an **occurrence** arising out of **trucking operations** or **brokerage operations:**

\*\*\*

PROVIDED ALWAYS THAT it is expressly agreed that no liability shall attach to the Company, except under Coverages F & G, until the **named insured** or **related insured** has paid the **ultimate net loss**.

\*\*\*

### DEFINITIONS
\*\*\*

D. "**costs**" means court costs, post judgment interest upon awards and judgments, and investigation, adjustment and legal expenses incurred by the **insured**, but does not include fines or statutory penalties, office expenses of the insured, salaries and expenses of employees or fees of counsel, except defense counsel, of the **insured**;

---

[1] Contract, Ex. 1 at 1, 7, 8, 10, 11.

**PLAINTIFF PROTECTIVE INSURANCE COMPANY'S**
**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**                                   **PAGE 4**

\*\*\*

G. "**damages**" means a monetary judgment or settlement paid by the insured and does not include fines or statutory penalties;

\*\*\*

M. "**insured**": Each of the following is an insured to the extent set forth below:

(1) the "**named insured**" as designated in the Declarations;

(2) the "**related insured(s)**", which shall include, if listed in the endorsements, the parent company or other company owning a controlling interest in the **named insured** and any subsidiary company of or company otherwise controlled by the **named insured's** ownership. If the **related insured** is a parent or other company owning a controlling interest in the **named insured**, then such **related insured** shall be indemnified only if its liability is solely caused by its ownership interest in the **named insured**. All other **related insureds**, if listed in the endorsements, shall be indemnified for their **trucking operations** as if a **named insured** under this contract;

\*\*\*

R. "**occurrence**":

Under Coverages A, B, C, D, E, F, G, and I, **occurrence** means an accident, including injurious exposure to conditions, which results, during the contract period, in **personal injury**, or **property damage**, including damage to or loss of cargo transported by the **insured** or damage to or loss of **covered vehicles**, neither expected or intended from the standpoint of the **insured**. All **personal injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **occurrence**;

S. "**personal injury**" means
(1) bodily injury, sickness or disease sustained by a person, including death at any time resulting therefrom;

\*\*\*

Y. "**property damage**" means:
(1) physical injury to or destruction of tangible property which occurs during the contract period, including the loss of use thereof at any time resulting therefrom, and
(2) loss of use of tangible property which has not been physically injured or destroyed, provided such loss is caused by an occurrence during the contract period;

Z. "**self retention**" means the amount, as specified in the Declarations, o the **ultimate net loss** to be paid solely by the insured and not subject to reimbursement by the Company. The **insured's self retention** shall not be reduced or eliminated by insurance, salvage, contribution, recoveries or reimbursements of any type from any source except **Employers Liability** insurance purchased by the **insured**;

\*\*\*

BB. "**trucking operations**" means those activities necessary to the business of transporting property by vehicle for hire;

CC. "**ultimate net loss**" means the total sums paid as **damages** in settlement of a claim or in satisfaction of a judgment, including pre-judgment interest, for which the **insured** is legally liable, and for losses otherwise incurred for which coverage is provided under this contract after making deductions for all other recoveries, salvages and insurance (whether recoverable or not), contributions and reimbursements. . . .

13. The Excess Indemnity Contract is unlike typical commercial liability insurance policies in that it does not obligate the insurer to provide a defense to the insured. In addition, there is no duty to pay reimbursements for defense costs until there is an **ultimate net loss** for a covered claim. Specifically, the Excess Indemnity Contract provides the following conditions:

A. Payment of Costs:[2]

All costs shall be paid by the **insured**. Costs shall reduce the **insured's self retention** but shall not reduce the applicable Limit of Indemnity. After payment of the **ultimate net loss**, the **costs** incurred by the **insured** shall be apportioned as follows:

(a) If the **ultimate net loss** plus **costs** is equal to or less than the **insured's self retention**, then no **costs** shall be payable by the Company;

(b) If the **ultimate net loss** plus costs exceeds the **insured's self retention** then the Company shall reimburse all **costs** paid by the **insured** in excess of the **self retention**, subject to (c);

---

[2] As amended by Endorsement No. 11 to the Contract. Ex. 1 at 30.

**PLAINTIFF PROTECTIVE INSURANCE COMPANY'S**
**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**                                            **PAGE 6**

>   (c) Once the applicable Limit of Indemnity has been exhausted, due to either our payment of the applicable Limit of Indemnity or offer to the pay the applicable Limit of Indemnity, no further **costs** shall be paid by the Company.
>
>   ***
>
>   F.  Administration of Claims:
>
>   ***
>
>   The **insured** shall fully investigate, settle or defend all claims and shall conduct the defense and appeal in all actions, suits and proceedings commenced against it or the Company if the Company is named as a defendant.
>
>   ***
>
>   G.  Assumption of Administration:
>
>   At any time after any **occurrence** which in the opinion of the Company might involve amounts in excess of the **insured's self retention**, the Company may, at its sole discretion, assume the administration of any claim or any litigation resulting therefrom in whole or in part.
>
>   ***

Ex. 1 at 13.

14. In other words, the insured is obligated to conduct its own defense "in all actions, suits and proceedings commenced against it," such as the Underlying Action. The Excess Indemnity Contract does not require Protective to provide a defense to an insured. In addition, it does not require Protective to reimburse defense costs in excess of the self retention, unless and until the underlying proceeding has concluded and the insured's liability is covered under the Excess Indemnity Contract.

**B.   Spotted Lakes and Moreno**

15. Protective is informed and believes that Spotted Lakes is an oil field services company that provides services in connection with petroleum exploration and production activities, including the delivery of sand for use in fracking operations at oil and gas well sites. Spotted Lakes is a **related insured** because it is listed on Endorsement No. 2 to the Excess

Indemnity Contract. The Contract provides that Spotted Lakes "shall be indemnified for [its] **trucking operations**" and provides no other basis for indemnity. Contract ¶ M(2), Ex. 1 at 8 (defining "**related insured(s)**").

16. Moreno was employed by Spotted Lakes as a sand coordinator. On information and belief, his job involved monitoring and coordinating delivery of truckloads of sand at well sites where Spotted Lakes was working. He neither drove a truck nor transported property by vehicle for hire as part of his job duties.

17. Protective is informed and believes that sand coordinators, such as Moreno, typically worked a "two weeks on, one week off" schedule rather than a Monday through Friday schedule. At the beginning of an "on" week, the sand coordinator would travel to the general vicinity of the well site and stay at a hotel nearby to rest between daily shifts. After working the week's final shift, the sand coordinator was free to return home (or the location of his choosing) at his discretion. Spotted Lakes paid its sand coordinators, including Moreno, a daily allowance to pay for lodging.

C. **The Accident and the Underlying Action**

18. At approximately 6:45 A.M. on July 12, 2017, Moreno clocked out from the night shift at a well site near Divot, Texas. It was his last shift before a week off. After clocking out, Moreno returned to his room at the Sona Inn in Dilley, Texas, to gather his belongings before driving home to San Juan, Texas. Moreno was not required or directed to drive home that morning. He was free to stay in the hotel room another day if he chose to do so. But Moreno declined to spend more than a few minutes at the hotel, and after gathering his things, he went to Burger King for breakfast.

19. At approximately 7:53 A.M. Moreno's vehicle left the southbound lanes on Interstate Highway 35, crossed the center median, and passed through an opening in the protective cable barrier that was down and not-yet-repaired from a crash in June 2017. His Chevrolet Impala was struck by two northbound vehicles, an oncoming tractor trailer and then a Ford Ranger pickup truck. Moreno died in the accident.

20. Perez was driving the Ford Ranger that struck Moreno's vehicle, and Rangel was his passenger. Both men sustained serious injuries in the accident.

21. In the Underlying Action, Rangel and Perez seek to recover damages from Spotted Lakes for their personal injuries. They contend that Spotted Lakes is vicariously liable for Moreno's negligence based on their allegation that Moreno was acting within the course and scope of his employment at the time of the accident. They also contend that Spotted Lakes was negligent in requiring Moreno to work night shifts and long hours and in not providing Moreno with appropriate fatigue training, which Rangel and Perez allege caused the accident. Spotted Lakes denies these allegations.

**D.   Spotted Lakes seeks a defense from Protective**

22. On or about December 1, 2017, Spotted Lakes notified Protective of the accident and that Spotted Lakes had been named as a defendant in the Underlying Action.

23. On October 2, 2019, Protective sent a letter to Spotted Lakes that contained its preliminary position regarding the claim and findings that the accident did not arise from "trucking operations" and that Moreno was not acting within the course and scope of employment at the time of the accident. Accordingly, Protective reserved its right to deny coverage and also agreed to reimburse Spotted Lakes for its defense costs subject to a "full reservation of rights to deny all coverage and future expense reimbursements." The letter further explained that "the Excess

[Indemnity] Contract does not require [Protective] to provide a defense to Spotted Lakes, and the fact that [Protective] has agreed to reimburse for such defense does not mean that is has the continuing obligation to do so."

24. On or about May 29, 2020, Spotted Lakes' counsel Teresa A. Carver sent a letter to Protective requesting reimbursement for defense costs above the self-insured retention amount.

25. On June 29, 2020, Protective responded via letter and declined to pay voluntary reimbursements. Protective explained that the accident in question did not arise out of an insured's "trucking operations" since Moreno was off-duty, driving home in his personal vehicle, an act that was neither required by Spotted Lakes nor undertaken on its behalf.

## V.
## CLAIM FOR DECLARATORY RELIEF

26. Protective hereby incorporates the preceding paragraphs as if fully set for herein.

27. The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

28. There exists an actual and justiciable controversy between Protective and Defendants concerning rights and obligations under the Excess Indemnity Contract with respect to the Underlying Action. The declaratory judgment Protective seeks would settle the controversy between Protective and the Defendants.

29. Specifically, Protective requests that this Court issue a judgment in its favor declaring as follows:

    a. The Excess Indemnity Contract does not obligate Protective to provide a defense or reimburse defense costs incurred by Spotted Lakes in the Underlying Action;

    b.    The claims in the Underlying Action arise out of Moreno's actions undertaken on his own behalf and solely for his benefit. Driving his personal vehicle during his week off was not within the course and scope of his employment by Spotted Lakes;

    c.    Protective cannot be liable for indemnity under the Excess Indemnity Contract because the claims in the Underlying Action did not arise out of "trucking operations," as that term is defined in the Excess Indemnity Contract. None of Moreno's acts or omissions after clocking out on July 12, 2017, were necessary to the business of transporting property by vehicle for hire. Likewise, none of the acts or omissions by Spotted Lakes that Rangel and Perez allege were negligent were necessary to the business of transporting property by vehicle for hire.

## VI.
## PRAYER

WHEREFORE, Protective respectfully requests that Defendants be summoned to appear and answer, and that the Court, on final trial or hearing, enter declaratory judgment in Protective's favor and award Protective all such other and further relief to which it is justly entitled.

—signature page follows—

**PLAINTIFF PROTECTIVE INSURANCE COMPANY'S**
**ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**　　　　　　　　**PAGE 11**

| | |
|---|---|
| Dated: October 2, 2020 | Respectfully submitted,<br><br>**DLA PIPER LLP (US)**<br><br>By: */s/ Barrett T. Robin*<br>Barrett T. Robin<br>Texas Bar No. 24098332<br>barrett.robin@us.dlapiper.com<br>1900 N. Pearl St., Suite 2200<br>Dallas, Texas 75201<br>Telephone: (214) 743-4551<br>Fax: (214) 665-5971<br><br>Aidan M. McCormack<br>(*pro hac vice* application forthcoming)<br>New York Bar No. 2507655<br>aidan.mccormack@us.dlapiper.com<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 335-4750<br>Fax: (917) 778-8750<br><br>**ATTORNEYS FOR PLAINTIFF<br>PROTECTIVE INSURANCE<br>COMPANY** |